STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ADAM P. SCHLEIFER (Cal. Bar No. 313818)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-4849
    Facsimile: (213) 894-6269
    E-mail:   adam.schleifer@usdoj.gov
LORINDA I. LARYEA
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
JENNIFER BILINKAS
MATTHEW FRANCIS SULLIVAN
Trial Attorneys, U.S. Department of Justice
Criminal Division, Fraud Section
    1400 New York Avenue NW, 3rd Floor
    Washington, DC 20530
    Telephone: (202) 305-3928; (202)-353-6200
    E-mail:   Jennifer.Bilinkas@usdoj.gov;
           matthew.sullivan2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT

7/20/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____VAV_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>         v.<br><br>MUHAMMAD NOOR UL AIN ATTA,<br><br>      Defendant. | CR No. 2:22-cr-00323-PA<br><br>PLEA AGREEMENT FOR DEFENDANT<br>MUHAMMAD NOOR UL AIN ATTA |

    1.   This constitutes the plea agreement between MUHAMMAD NOOR UL AIN ATTA ("defendant") and the United States Attorney's Office for the Central District of California and the United States Department of Justice, Criminal Division, Fraud Section (referred to collectively herein in as the "United States") in the above-captioned

case.  This agreement is limited to the United States and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.  Defendant agrees to:

a.  Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the United States and provided by the Court, appear and plead guilty to Counts One and Two of a two-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Wire Fraud in violation of 18 U.S.C. § 1343 (Count One) and Concealment Money Laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2(b) (Count Two).

b.  Not contest facts agreed to in this agreement.

c.  Abide by all agreements regarding sentencing contained in this agreement.

d.  Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.  Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.  Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.  Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

1          h.   Defendant agrees that any and all criminal debt
2     ordered by the Court will be due in full and immediately.  The
3     government is not precluded from pursuing, in excess of any payment
4     schedule set by the Court, any and all available remedies by which to
5     satisfy defendant's payment of the full financial obligation,
6     including referral to the Treasury Offset Program.

7          i.   Complete the Financial Disclosure Statement on a form
8     provided by the United States and, within 30 days of defendant's
9     entry of a guilty plea, deliver the signed and dated statement, along
10    with all of the documents requested therein, to the United States by
11    either email at usacac.FinLit@usdoj.gov (preferred) or mail to the
12    USAO Financial Litigation Section at 300 North Los Angeles Street,
13    Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's
14    ability to pay criminal debt shall be assessed based on the completed
15    Financial Disclosure Statement and all required supporting documents,
16    as well as other relevant information relating to ability to pay.

17         j.   Authorize the United States to obtain a credit report
18    upon returning a signed copy of this plea agreement.

19         k.   Consent to the United States inspecting and copying
20    all of defendant's financial documents and financial information held
21    by the United States Probation and Pretrial Services Office.

22    3.   Defendant further agrees:

23         a.   To the entry as part of defendant's guilty plea of a
24    personal money judgment of forfeiture against defendant in the amount
25    of $6,643,540, which sum defendant admits was derived from proceeds
26    traceable to or involved in the violations described in the factual
27    basis of the plea agreement.  Defendant understands that the money
28    judgment of forfeiture is part of defendant's sentence and is

3

separate from any fines or restitution that may be imposed by the Court.

b. Before the time of sentencing, to transmit, as directed by the government and to the United States Treasury, at least $2.1 million in funds currently under defendant's custody and control in Pakistan, and to take all possible steps to liquidate real property purchased in Pakistan for approximately $3.5 million and transmit all proceeds of any resulting sale to the United States Treasury as directed by the United States, which funds and property defendant admits were derived from proceeds traceable to or involved in the violations described in the factual basis of the plea agreement. Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States. Pursuant to the Asset Forfeiture Policy Manual (2021), Chapter 14, Sec. II.B.2 and 28 C.F.R. Part 9.8, upon a determination that the United States can make the required representations set forth therein, the United States agrees to submit a restoration request to the Money Laundering and Asset Recovery Section of the Department of Justice, seeking approval for assets forfeited in satisfaction of the forfeiture money judgment to be restored back to the victims in this case, which may, in turn, satisfy in full or in part any restitution order. The Defendant acknowledges that the Attorney General, or his designee, has the sole discretion to approve or deny the restoration request.

c. With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding

4

notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal and equitable defenses to the money judgment of forfeiture in any proceeding on any grounds including, without limitation, that the money judgment of forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that entry of the money judgment of forfeiture is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

<u>THE UNITED STATES'S OBLIGATIONS</u>

4.   The United States agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 26 or higher and provided that the Court

does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

NATURE OF THE OFFENSES

5.   Defendant understands that for defendant to be guilty of the crime charged in Count One, that is, Wire Fraud in violation of 18 U.S.C. § 1343, the following must be true:

a.   Defendant knowingly devised or participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

b.   The statements made as part of the scheme were material.  That is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

c.   Defendant acted with the intent to defraud, i.e., with the intent to deceive and cheat; and

d.   Defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

6.   Defendant understands that for defendant to be guilty of the crime charged in Count Two, that is, Concealment Money Laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), the following must be true:

a.   Defendant conducted or willfully caused a financial transaction involving property that represented the proceeds of wire fraud;

b.   Defendant knew that the property represented the proceeds of some form of unlawful activity; and

c.   Defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds.

<u>PENALTIES AND RESTITUTION</u>

7.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation 18 U.S.C. § 1343 is: a term of imprisonment of twenty years; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greater; and a mandatory special assessment of $100.

8.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1956(a)(1)(B)(i) is a term of imprisonment of twenty years; a fine of $500,000 or twice the value of the property involved in the transaction, whichever is greater; and a mandatory special assessment of $100.

9.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: forty years of imprisonment; a 3-year period of supervised release; a fine of $750,000 or twice the gross gain or gross loss resulting from the offense charged in Count One combined with twice the value of the property involved in the transaction charged in Count Two, whichever is greatest; and a mandatory special assessment of $200.

10.   Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for

the United States's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any count dismissed and charge not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts. The parties currently believe that the applicable amount of restitution is approximately $6,643,540, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

11.  The Court will also order the imposition of a forfeiture money judgment as described in paragraph 3 of this agreement.

12.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

13.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic

8

rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

14.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

1

### FACTUAL BASIS

2   15.  Defendant admits that defendant is, in fact, guilty of the

3   offenses to which defendant is agreeing to plead guilty.  Defendant

4   and the United States agree to the statement of facts provided below

5   and agree that this statement of facts is sufficient to support pleas

6   of guilty to the charges described in this agreement and to establish

7   the Sentencing Guidelines factors set forth in paragraph 17 below but

8   is not meant to be a complete recitation of all facts relevant to the

9   underlying criminal conduct or all facts known to either party that

10  relate to that conduct.

11  Beginning in or about March 2020 and continuing through in or

12  about July 2020, in Los Angeles and Riverside Counties, within the

13  Central District of California, and elsewhere, defendant knowingly

14  and with intent to defraud, devised, participated in, and executed a

15  scheme to defraud the SBA and an SBA-approved lender by means of

16  materially false and fraudulent pretenses, representations, and

17  promises by fraudulently obtaining federal disaster relief funds

18  distributed through the Paycheck Protection Program ("PPP") and

19  Economic Injury Disaster Loan ("EIDL") program, and by fraudulently

20  using and concealing those funds.

21  Defendant was the owner of Fontana CK Inc., American Auto Barn

22  LLC, Envisioning Future Inc., Wermer Construction Inc., and Camel and

23  Camel Inc., which were businesses registered in California.

24  Defendant also controlled Liberty RV, LLC and CKSC, LLC, which were

25  businesses registered in California.  At no time in 2019 or the first

26  two quarters of 2020 did any of these businesses file any quarterly

27  federal taxes or tax forms, and during that same time period, they

28  existed only as "shell companies."  Defendant controlled business

checking accounts, maintained at Bank of America, ending in 6052, 0859, 2143, 0251, 1858, and 3333, and used these accounts to receive fraudulent PPP and EIDL proceeds.

On or about April 10, 2020, defendant caused the submission of an application to Lender A in the name of Envisioning Future Inc. ("Envisioning Future") seeking a PPP loan in the amount of $1,267,714, which application: (a) falsely represented that Envisioning Future had 73 employees, including employees for whom it paid wages and payroll taxes; and (b) falsely certified Envisioning Future would use the loan proceeds for permissible business purposes.

On or about April 10, 2020, defendant caused the submission of false and fraudulent documents to Lender A in support of the Envisioning Future PPP loan application, including: (a) falsified Internal Revenue Service ("IRS") Employer's Quarterly Federal Tax Returns (IRS Form 941) for Envisioning Future for each quarter of 2019 and the first quarter of 2020; and (b) false payroll data and documentation for Envisioning Future, including documents purporting to be payroll registers for 2019 and the first quarter of 2020, purporting to show wages paid to its employees.

In reliance upon defendant's materially false statements, Lender A approved and funded the Envisioning Future PPP loan, and on or about May 12, 2020, Lender A wired approximately $1,267,140 in proceeds from the Envisioning Future PPP loan to the Envisioning Future Account controlled by defendant.

On or about May 13, 2020, defendant caused a cashier's check for approximately $1,277,000 drawn from the Envisioning Future Account, which in substantial part came from the Envisioning Future PPP loan

proceeds, to be deposited into his mother's personal account bank account at Bank of America ending 3283 ("S.M. Account #1").

On or about June 22, 2020, defendant willfully caused approximately $1,376,627, which in substantial part comprised the $1,267,140 in the Envisioning Future PPP loan proceeds, to be wired from the S.M. Account #1 to a financial institution in Islamabad, Pakistan, which was controlled by individuals other than defendant. The wire transfer details included a note that the wire was "family support."

Defendant also knowingly submitted false and fraudulent information, including the existence of payroll expenses, the creation and submission of false information in purported IRS tax forms, and the operational status of the businesses, in the PPP and EIDL applications described in the table below.  Defendant made these false and fraudulent statements knowing they were material, and in order to induce the SBA, and the PPP lender described in the table below, to approve the EIDL and PPP loans and cause the loan proceeds to be transferred via interstate wire to his bank accounts.

| No. | Business Applicant | Approx. Disbursed Loan Amount | Processor/Lender | Loan Type | Approx. Date Funded |
|-----|--------------------|-------------------------------|------------------|-----------|---------------------|
| 1 | Fontana CK | $1,908,595 | Lender A | PPP | 6/5/2020 |
| 2 | Liberty RV LLC | $260,275 | Lender A | PPP | 5/12/2020 |
| 3 | Liberty RV LLC | $150,000 | SBA | EIDL | 7/2/2020 |
| 4 | American Auto Barn | $401,175 | Lender A | PPP | 5/12/2020 |
| 6 | Envisioning Future Inc. | $1,267,140 | Lender A | PPP | 5/12/2020 |
| 7 | Envisioning Future Inc. | $150,000 | SBA | EIDL | 6/12/2020 |
| 8 | Wermer Construction Inc. | $326,335 | Lender A | PPP | 5/13/2020 |
| 9 | Wermer Construction Inc. | $150,000 | SBA | EIDL | 7/2/2020 |
| 10 | CKCB LLC | $1,020,230 | Lender A | PPP | 6/3/2020 |
| 11 | Camel and Camel | $859,790 | Lender A | PPP | 6/3/2020 |

Furthermore, in each of the above PPP and EIDL applications submitted by defendant, defendant certified that, as the authorized representative of the businesses on whose behalf the applications were submitted, defendant knew and understood the terms and rules of the PPP and EIDL programs, and that the funds were to be used by the recipient to only pay certain authorized business expenses. Instead of using the PPP and EIDL loan proceeds for their stated and authorized business purposes consistent with PPP and EIDL rules, however, defendant knowingly misappropriated and used the PPP and EIDL loan proceeds for his own personal benefit, including for the

purpose of concealing the source, nature, and location of his fraudulently derived funds through the purchase of cashier checks and through transfers of his ill-gotten gains to bank accounts in Pakistan.

Defendant admits and agrees that, in executing the above-described scheme to defraud the SBA and Lender A, defendant employed sophisticated means and generated ill-gotten gains and caused equivalent losses in the approximate amount of $6,643,540.

SENTENCING FACTORS

16.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

17.   Defendant and the United States agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. §2B1.1(a)(1) |
| Specific Offense Characteristics: | | |
| Loss Exceeding $3,500,000 | +18 | U.S.S.G. § 2B1.1(b)(1)(J) |
| Sophisticated Means | +2 | U.S.S.G. § 2B1.1(b)(10)(C) |
| Conviction Under § 1956 | +2 | U.S.S.G § 2S1.1(b)(2)(B) |

Defendant and the United States reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

18.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

19.   Defendant and the United States reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

20.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

21.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

22.  Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 78 months, defendant gives up the right to appeal all of the following:

16

(a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $7,000,000; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

23. The United States agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 63 months, the United States gives up its right to appeal any portion of the sentence, with the exception that the United States reserves the right to appeal the amount of restitution ordered if that amount is less than $6,643,540.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

24. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the United States will be relieved of all of its obligations under this agreement; and (b) should the United

States choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

EFFECTIVE DATE OF AGREEMENT

25.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

26.   Defendant agrees that if defendant, at any time after the effective date of the agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the United States may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the United States to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the United States in writing.  If the United States declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the United States will be relieved of all its obligations under this agreement.

27. Following the Court's finding of a knowing breach of this agreement by defendant, should the United States choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

28. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the United States's sentencing

recommendations or the parties' agreements to facts or sentencing factors.

29. Defendant understands that both defendant and the United States are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 17 are consistent with the facts of this case. While this paragraph permits both the United States and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the United States's obligations not to contest the facts agreed to in this agreement.

30. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

1                    NO ADDITIONAL AGREEMENTS

2        31.  Defendant understands that, except as set forth herein,

3  there are no promises, understandings, or agreements between the

4  United States and defendant or defendant's attorney, and that no

5  additional promise, understanding, or agreement may be entered into

6  unless in a writing signed by all parties or on the record in court.

7         PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

8        32.  The parties agree that this agreement will be considered

9  part of the record of defendant's guilty plea hearing as if the

10  entire agreement had been read into the record of the proceeding.

11  AGREED AND ACCEPTED

12  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
13  CALIFORNIA

14  STEPHANIE S. CHRISTENSEN
    Acting United States Attorney

15

16        *APS*                                July 20, 2022
    _____    _____
17  ADAM P. SCHLEIFER                    Date
    Assistant United States Attorney

18  JENNIFER BILINKAS
    MATTHEW FRANCIS SULLIVAN
19  Trial Attorneys, DOJ Fraud Section

20

21

    _____    _____
22  MUHAMMAD ATTA                        Date
    Defendant

23

    _____    _____
24  DEAN STEWARD                         Date
    Attorney for Defendant MUHAMMAD
25  ATTA

26

27

28

                            21

<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          _____
MUHAMMAD ATTA                              Date
Defendant


<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

I am MUHAMMAD ATTA's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set

forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____        _____
DEAN STEWARD                                   Date
Attorney for Defendant MUHAMMAD
ATTA

1                        NO ADDITIONAL AGREEMENTS

2       31.   Defendant understands that, except as set forth herein,

3  there are no promises, understandings, or agreements between the

4  United States and defendant or defendant's attorney, and that no

5  additional promise, understanding, or agreement may be entered into

6  unless in a writing signed by all parties or on the record in court.

7            PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

8       32.   The parties agree that this agreement will be considered

9  part of the record of defendant's guilty plea hearing as if the

10  entire agreement had been read into the record of the proceeding.

11  AGREED AND ACCEPTED

12  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
13  CALIFORNIA

14  STEPHANIE S. CHRISTENSEN
   Acting United States Attorney

15

16  _____       _____
17  ADAM P. SCHLEIFER                       Date
   Assistant United States Attorney

18  JENNIFER BILINKAS
   MATTHEW FRANCIS SULLIVAN
19  Trial Attorneys, DOJ Fraud Section

20

21                                          07/19/22
22  _____       _____
   MUHAMMAD █████ NSOR ATTA                 Date
23  Defendant
   _____       7-19-22
24  DEAN STEWARD                            Date
   Attorney for Defendant MUHAMMAD Noor
25  ATTA

26

27

28

                                21

1

CERTIFICATION OF DEFENDANT

2    I have read this agreement in its entirety.  I have had enough

3    time to review and consider this agreement, and I have carefully and

4    thoroughly discussed every part of it with my attorney.  I understand

5    the terms of this agreement, and I voluntarily agree to those terms.

6    I have discussed the evidence with my attorney, and my attorney has

7    advised me of my rights, of possible pretrial motions that might be

8    filed, of possible defenses that might be asserted either prior to or

9    at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10   of relevant Sentencing Guidelines provisions, and of the consequences

11   of entering into this agreement.  No promises, inducements, or

12   representations of any kind have been made to me other than those

13   contained in this agreement.  No one has threatened or forced me in

14   any way to enter into this agreement.  I am satisfied with the

15   representation of my attorney in this matter, and I am pleading

16   guilty because I am guilty of the charges and wish to take advantage

17   of the promises set forth in this agreement, and not for any other

18   reason.

19

_____        07/19/22

20   MUHAMMAD ~~____~~ NOOR ATTA            _____
     Defendant                             Date

21

22

23

CERTIFICATION OF DEFENDANT'S ATTORNEY

24   I am MUHAMMAD ATTA's attorney.  I have carefully and thoroughly

25   discussed every part of this agreement with my client.  Further, I

26   have fully advised my client of his rights, of possible pretrial

27   motions that might be filed, of possible defenses that might be

28   asserted either prior to or at trial, of the sentencing factors set

22

1    forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

2    provisions, and of the consequences of entering into this agreement.

3    To my knowledge: no promises, inducements, or representations of any

4    kind have been made to my client other than those contained in this

5    agreement; no one has threatened or forced my client in any way to

6    enter into this agreement; my client's decision to enter into this

7    agreement is an informed and voluntary one; and the factual basis set

8    forth in this agreement is sufficient to support my client's entry of

9    guilty pleas pursuant to this agreement.

10

11   DEAN STEWARD                          7-19-22
     Attorney for Defendant MUHAMMAD NOOR   Date

12   ATTA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23

**EXHIBIT A**

1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9               FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          CR No.

11            Plaintiff,                I N F O R M A T I O N

12            v.                        [18 U.S.C. § 1343: Wire Fraud; 18
                                        U.S.C. 1956(a)(1)(B)(i):
13   MUHAMMAD NOOR UL AIN ATTA,         Laundering of Monetary
                                        Instruments; 18 U.S.C.
14                                      §§ 981(a)(1)(C), 982; 28 U.S.C.
              Defendant.                § 2461(c): Criminal Forfeiture]
15

16        The Acting United States Attorney charges:

17                            COUNT ONE

18                       [18 U.S.C. § 1343]

19   A.   INTRODUCTORY ALLEGATIONS

20        At times relevant to this Information:

21        1.   Defendant MUHAMMAD NOOR UL AIN ATTA was a resident of

22   Corona, California.

23        2.   S.M. was a relative of defendant ATTA and a resident of La

24   Verne, California.

25        3.   Envisioning Future Inc. was incorporated in or around April

26   2008 by defendant ATTA.  Defendant ATTA was listed as the

27   incorporator, CEO, CFO, President, Secretary, sole director, and

28   agent for service of process for the entity.

4.    Bank 1 was a financial institution that was insured by the Federal Deposit Insurance Corporation.

5.    Defendant ATTA controlled and was the sole signatory to a business checking account in the name of Envisioning Future Inc., maintained at Bank 1, with an account number ending in 0859 (the "Envisioning Future Account") in Eastvale, California.

6.    S.M. maintained and was a signatory to a personal checking account in the name of S.M. ending in 3283 at Bank 1 ("S.M. Account #1") in Eastvale, California.

7.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic.  One form of assistance provided by the CARES Act was the authorization of United States taxpayer funds in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

8.    In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business.  The PPP loan application required the small business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  One such certification required the applicant to affirm that "[t]he [PPP loan] funds w[ould] be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments."  The applicant (through its authorized representative) was also required to acknowledge that "I understand that if the funds are

2

used for unauthorized purposes, the federal government may pursue criminal fraud charges."  In the PPP loan application, the applicant was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.  In addition, the applicant was required to provide documentation showing its payroll expenses.

9.   A business's PPP loan application was received and processed, in the first instance, by a participating financial institution.  If a PPP loan application was approved, the participating financial institution would fund the PPP loan using its own monies.

10.   Lender A was a non-bank lender approved to participate in the PPP by the United States Small Business Administration ("SBA").

11.   Businesses were required to apply PPP loan proceeds only to certain permissible categories of expense, namely, payroll costs, interest on mortgages, rent, and utilities.  The PPP allowed the interest and principal on the PPP loan to be forgiven if the business applied the loan proceeds to the specified permissible categories of expense within a designated period of time and used at least a minimum amount of the PPP loan proceeds towards payroll expenses.

12.   The Economic Injury Disaster Loan Program ("EIDL") was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

13.   The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

14.   To obtain an EIDL loan, a qualifying business was required to submit an application to the SBA and provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster.  In the case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019, to January 31, 2020.  The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

15.   EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor.  The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold.  Any funds issued under an EIDL loan were issued directly by the SBA.

16.   EIDL loan funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  If the applicant also obtained a loan under the PPP, the EIDL loan funds could not be used for the same purpose as the PPP loan funds.

B.   SCHEME TO DEFRAUD

17.   Beginning in or around March 2020 and continuing through in or around July 2020, in Los Angeles and Riverside Counties, within the Central District of California, and elsewhere, defendant ATTA, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the SBA and SBA-approved Lender A as to material matters, and to obtain money and property from the SBA and

4

Lender A by means of materially false and fraudulent pretenses, representations, and promises.

18.    The scheme to defraud operated, in substance, as follows:

a.    Defendant ATTA applied for PPP and EIDL loans on behalf of various business entities he controlled that existed "on paper" but maintained no ongoing business operations, including Envisioning Future Inc. (the "Shell Companies").

b.    To induce the SBA and Lender A to approve the PPP and EIDL loans filed on behalf of the Shell Companies, defendant ATTA included false and fraudulent statements in the loan applications, including false representations regarding the number of employees to whom the Shell Companies had paid wages, the average monthly payroll, and the gross receipts earned by the purported businesses.

c.    Defendant ATTA electronically submitted fictitious documents to the SBA and Lender A in support of the fraudulent PPP and EIDL loan applications, including false tax documents on behalf of the Shell Companies.

d.    As part of the PPP and EIDL applications he submitted, defendant ATTA falsely certified that the PPP and EIDL funds were to be used only to pay certain authorized business expenses.  Defendant ATTA instead knowingly misappropriated the PPP and EIDL loan proceeds for his own prohibited personal benefit rather than using the proceeds to pay authorized business expenses as he had certified he would do.

e.    By the materially false and fraudulent representations defendant ATTA included in his applications for PPP and EIDL loans, defendant ATTA caused Lender A to transfer via interstate wire PPP

and EIDL loan proceeds to the Envisioning Future Account and other accounts in the names of the Shell Companies.

f.   To conceal the PPP and EIDL loan proceeds he fraudulently obtained and disguise his misuse of funds, defendant ATTA transferred and caused others to transfer the funds in various ways, including through the purchase of cashiers' checks made out to S.M., the deposit of those cashiers' checks into S.M. Account #1, and the wiring of the funds from S.M. Account #1 to bank accounts in Pakistan.

19.  As a result of his scheme, defendant fraudulently obtained approximately $6,643,540 in PPP and EIDL loan proceeds to which he knew he was not entitled.

C.   USE OF INTERSTATE WIRES

20.  On or about May 12, 2020, in Los Angeles and Riverside Counties, within the Central District of California, and elsewhere, defendant ATTA, for the purpose of executing the above-described scheme to defraud, caused the transmission of an item by means of wire communication in interstate commerce, namely, a wire transfer of approximately $1,267,140 in PPP loan proceeds from Lender A to the Envisioning Future Account.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT TWO

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(b)]

21.   The Acting United States Attorney realleges paragraphs 1 through 16 and 18 through 20 of this Information here.

22.   On or about May 13, 2020, in Los Angeles and Riverside Counties, within the Central District of California, and elsewhere, defendant ATTA knowingly conducted, and willfully caused others to conduct, a financial transaction, namely, the deposit of a cashier's check for $1,277,000 into S.M. Account #1, knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, namely, Wire Fraud, in violation of Title 18, United States Code, Section 1343, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of such proceeds.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count One of this Information.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of the defendant's conviction of the offense set forth in Count Two of this Information.

2.    The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)  Any property, real or personal, involved in such offense, and any property traceable to such property; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.  Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in

committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

STEPHANIE S. CHRISTENSEN
Acting United States Attorney


SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

LORINDA I. LARYEA
Acting Chief, Fraud Section
Criminal Division
United States Department of Justice

ALEXANDER B. SCHWAB
Assistant United States Attorney
Deputy Chief, Major Frauds Section

ADAM SCHLEIFER
Assistant United States Attorney
Major Frauds Section

JENNIFER BILINKAS
Trial Attorney, Fraud Section
Criminal Division
United States Department of Justice

MATTHEW FRANCIS SULLIVAN
Trial Attorney, Fraud Section
Criminal Division
United States Department of Justice